**William Zafra Velasco, Jr.**
NAME

**AK7481**
PRISON IDENTIFICATION/BOOKING NO.

**P.O. Box 834**
ADDRESS OR PLACE OF CONFINEMENT

**South Pasadena, California 91031-0834**

Note:   It is your responsibility to notify the Clerk of Court in writing of any
change of address. If represented by an attorney, provide his name,
address, telephone and facsimile numbers, and e-mail address.

PAID
DEC 3 0 2015

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**William Zafra Velasco, Jr.**
FULL NAME (Include name under which you were convicted)

Petitioner,

v.

**Jeffrey A. Beard**
NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER

Respondent.

CASE NUMBER:

CV **CV15-09995** AB(SP)

To be supplied by the Clerk of the United States District Court

☐ _____ **AMENDED**

## PETITION FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION   **Los Angeles County**
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number)
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.   To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.   In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3.   Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.   Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.   You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.   You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.   When you have completed the form, send the original and two copies to the following address:

Clerk of the United States District Court for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
312 North Spring Street
Los Angeles, California 90012



PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1.  ☑ a conviction and/or sentence.
2.  ☐ prison discipline.
3.  ☐ a parole problem.
4.  ☐ other.

## PETITION

1.  Venue

    a.  Place of detention ___State Parole Custody [Los Angeles County]___

    b.  Place of conviction and sentence ___Superior Court of Los Angeles County - Pomona___

2.  Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).

    a.  Nature of offenses involved (*include all counts*) : ___one count - felony residential burglary; 14 counts - misdemeanor disorderly conduct; one count - misdemeanor possession of burglary tools___

    b.  Penal or other code section or sections: ___Cal. Pen. Code §§ 459; 647(j)(3); 466___

    c.  Case number: ___KA094631___

    d.  Date of conviction: ___December 13, 2011___

    e.  Date of sentence: ___January 17, 2012___

    f.  Length of sentence on each count: ___four-years state prison, with six month concurrent terms for misdemeanors; Lifetime Sex Offender Registration per Cal. Pen. Code § 290___

    g.  Plea (*check one*):

        ☐ Not guilty

        ☑ Guilty

        ☐ Nolo contendere

    h.  Kind of trial (*check one*):

        ☐ Jury

        ☑ Judge only

3.  Did you appeal to the California Court of Appeal from the judgment of conviction?   ☑ Yes   ☐ No

    If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):

    a.  Case number: ___B239192___

    b.  Grounds raised (*list each*):

        (1)  The Trial Court Abused Its Discretion in Ordering Discretionary Lifetime Sex Offender Registration Because it Used an Incorrect Legal Standard

        (2)  Even Under the Correct Standard, Requiring Appellant to Register as a Lifetime Sex Offender Was an Abuse of Discretion



(3) The Trial Court Violated Appellant's Sixth Amendment Right to a Jury Trial by Imposing Sex Offender Registration Based on Facts Not Admitted by the Defendant or Found by a Jury Beyond a Reasonable Doubt

(4) _____

(5) _____

(6) _____

c.   Date of decision:   April 29, 2014

d.   Result   2-1 Decision, Affirmed. (Dissent: "Because I conclude the trial court abused its discretion in ordering Velasco to register for life as a sex offender I respectfully dissent.")

4.   If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision?   ☑Yes   ☐No

If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)* :

a.   Case number:   S219234

b.   Grounds raised *(list each)* :

(1) This Court Should Grant Review to Provide Guidance On the Exercise of Discretion Under Penal Code Section 290.006, and the Quantum of Risk of Reoffense Required to Order Sex Offender Registration Under that Section.

(2) This Court Should Grant Review and Reverse the Order of Lifetime Sex Offender Registration Because the Order Was an Abuse of Discretion.

(3) This Court Should Grant Review Because the Trial Court Violated Appellant's Sixth Amendment Right to Jury Trial by Imposing Sex Offender Registration Based on Facts Not Admitted by the Defendant or Found by a Jury Beyond a Reasonable Doubt.

(4) _____

(5) _____

(6) _____

c.   Date of decision:   August 13, 2014

d.   Result   Petition Denied. ("The petition for review is denied without prejudice to any relief to which defendant might be entitled after this court decides People v. Mosley, S187965.")

5.   If you did not appeal,

a.   State your reasons _____

_____

_____

_____

_____

b.   Did you seek permission to file a late appeal?   ☐Yes   ☐No

6.   Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?

☐ Yes   ☑No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed   *(or if mailed, the date the petition was turned over to the prison authorities for mailing):*   _____



(4) Grounds raised *(list each)*:

      (a) _____

      (b) _____

      (c) _____

      (d) _____

      (e) _____

      (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

b.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)* : _____

    (4) Grounds raised *(list each)*:

      (a) _____

      (b) _____

      (c) _____

      (d) _____

      (e) _____

      (f) _____

    (5) Date of decision: _____

    (6) Result _____

_____

    (7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

c.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

      (a) _____

      (b) _____

      (c) _____

      (d) _____

      (e) _____

      (f) _____



(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?        ☐ Yes ☐ No

7.   Did you file a petition for certiorari in the United States Supreme Court?        ☑ Yes        ☐ No

If yes, answer the following:

(1) Docket or case number (if you know): __14-7075_____

(2) Result: __Petition Denied._____

_____

(3) Date of result (if you know): __January 20, 2015_____

(4) Citation to the case (if you know): _____

8.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the <u>facts</u> supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

**CAUTION:**     *Exhaustion Requirement:*  In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court.  This means that, prior to seeking relief from the federal court, you first must present <u>all</u> of your grounds to the California Supreme Court.

a.   Ground one:    __Fourteenth Amendment Right Violated When Lifetime Sex Offender Regis-__
__tration Not Subjected To Proportionality Review. Lifetime Registration Is Disproportionate.__

(1) Supporting FACTS:   __See Memorandum [attached]._____

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?        ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?        ☐ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?        ☐ Yes    ☐ No

b.   Ground two:    __Sixth Amendment Right Violated When Judge Imposed Discretionary Lifetime__
__Sex Offender Registration.__

(1) Supporting FACTS:    __See Memorandum [attached]._____

_____



_____

_____

_____

    (2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

    (3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

    (4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

c.  Ground three: _____

    (1) Supporting FACTS: _____

_____

_____

_____

_____

    (2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

    (3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

    (4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

d.  Ground four: _____

    (1) Supporting FACTS: _____

_____

_____

_____

    (2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

    (3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☐ Yes    ☐ No

    (4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No

e.  Ground five: _____

    (1) Supporting FACTS: _____

_____

_____

_____

    (2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No



(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐Yes   ☐No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☐Yes   ☐No

9. If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐Yes   ☑No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?   ☐Yes ☐No

b.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____



(6) Result _____

_____

(7) Was an evidentiary hearing held?        ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?        ☐ Yes ☑ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?        ☐ Yes ☑ No

If so, provide name, address and telephone number: _____

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding,

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _12:30-2015_                    _William S. Villasco_
          *Date*                              *Signature of Petitioner*

Filed 4/29/14

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL – SECOND D

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA F I L E D

SECOND APPELLATE DISTRICT

Apr 29, 2014

DIVISION EIGHT

JOSEPH A. LANE, Clerk

KLEWIS _____ Deputy Cle

| | |
|---|---|
| THE PEOPLE, | B239192 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA094631) |
| v. | |
| WILLIAM ZAFRA VELASCO, JR., | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Steven D. Blades, Judge. Affirmed.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson, Janet E. Neeley and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * * *

Defendant William Zafra Velasco, Jr., pled guilty, without a plea agreement, to one count of burglary (Pen. Code, § 459, count 1)[1], 14 counts of invasion of privacy (§ 647, subd. (j)(3), counts 2 through 15), and one count of possessing burglary tools (§ 466, count 17). During sentencing, the trial court exercised its discretion under section 290.006 to require defendant to register as a sex offender for life. Defendant contends the trial court abused its discretion by applying an improper legal standard when determining whether to order registration. Defendant further contends that because the registration requirement includes a residency restriction, it constitutes a punishment that increases the penalty for his conviction, and that he was not advised and asked to waive his right to have a jury decide the facts indicating whether he should be required to register. Relying on *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*), defendant argues that a jury must find true, beyond a reasonable doubt, the facts supporting discretionary imposition of the registration requirement. We reject both of defendant's claims and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual basis of defendant's plea was evidence received at his preliminary hearing.

On April 14, 2011, defendant visited a Starbucks in Glendora and placed a hidden camera in the women's restroom, pointed at the toilet. The camera looked like a hook, and was capable of recording and storing video. Over a two-day period, defendant entered the restroom hourly to replace the camera with an identical one. Defendant took the used cameras home and downloaded the videos to his computer. Videos of multiple females were captured, including underage girls. Defendant downloaded approximately 35 videos over the two-day period.

As a Starbucks employee was cleaning the restroom, she discovered a camera beneath the sink. The employee removed the camera and showed it to her manager, who called the police.

---

[1]     All further undesignated references are to the Penal Code.

That same month, the apartment of Jane Doe 1 on the campus of a university in Glendora was burglarized. She had female roommates, including Jane Does 17 and 18. Between April 18, 2011, and April 24, 2011, the students were gone for spring break. Previously, defendant had seen Jane Doe 1 at the apartment complex and thought she was beautiful. Defendant went to her apartment at night and knocked on the door. When defendant realized no one was home, he entered the apartment through a window, and stole Jane Doe 1's underwear, and her roommates' underwear as well. In addition to the underwear, defendant took plastic tampon applicators and Jane Doe 1's bank statement.

Upon returning home from spring break, Jane Doe 17 noticed her bed was askew, two window blinds had been ripped off, and that the window screen had been removed. All three women found that some of their underwear was missing and identified the underwear and plastic tampon applicators as theirs in court.

Glendora Police Detective Nancy Miranda identified defendant as the person who repeatedly entered the women's restroom at Starbucks by reviewing security footage, defendant's credit card information tracked through a purchase made there, and by accessing defendant's Facebook page. On May 4, 2011, police took defendant into custody and executed a warrant to search his home. In defendant's bedroom, police found several hook cameras, several pieces of women's underwear, plastic tampon applicators, a bank statement belonging to Jane Doe 1, and a set of lock picks. The underwear, tampon applicators and bank statement were together in a box under defendant's bed. The underwear was kept in a plastic bag within the box.

Detective Miranda advised defendant of his *Miranda*[2] rights. Defendant waived his rights and freely spoke with Detective Miranda. Defendant told Detective Miranda he made the hidden restroom recordings out of sexual frustration. He put the hidden cameras in the Starbucks restroom to film women relieving themselves, because he had a "fetish" for watching women use the restroom. Defendant denied putting cameras in any other locations, and denied sharing the videos.

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

Defendant admitted he broke into the victims' apartment to steal their underwear to masturbate to, and that he placed the underwear in a plastic bag to preserve the scent. He took Jane Doe 1's bank statement so that he could find her picture on the Internet to look at while he masturbated.

Defendant's sentencing memorandum included assessments from mental health professionals who treated defendant, describing defendant's efforts to receive treatment for his sexual addiction. It also included 26 letters of support from defendant's friends and family. On May 6, 2011, two days after his arrest, defendant visited a clinical psychologist, Judith Meyers-Abell, who advised him to see a sex therapist. On May 18, 2011, defendant began weekly sessions with William Bercaw, a certified sex addiction therapist and certified sex therapist, who reported that defendant "diligently embraced his treatment" and "is highly unlikely to repeat his offenses." Bercaw noted that defendant was very remorseful and was disgusted by the crimes he committed. In June, Dr. Timothy Fong diagnosed defendant with compulsive sexual disorder, major depressive disorder, and social anxiety disorder. He opined that defendant would not have committed his offenses if he had received mental health treatment before he offended. Dr. Fong believed defendant "made significant improvements in his recovery and overall stability." In November, defendant completed an intensive 12-day outpatient program at the Sexual Recovery Institute in Los Angeles. Defendant was observed to be "engaged and attentive." He "made significant progress in addressing" his behaviors that led to treatment. Dr. Nathan Lavid conducted a psychiatric evaluation on December 12, 2011, and concluded that defendant's "risk of recidivism is low" and that defendant "does not pose a danger to the community."

At sentencing, the trial court denied probation and sentenced defendant to four years in prison on the burglary charge. Defendant's sentence of six months for each of the misdemeanor counts was ordered to run concurrently with the burglary count. Pursuant to section 290.006, the court ordered defendant to lifetime sex offender registration, stating "there's no doubt in my mind that these crimes were committed for the purpose of sexual gratification." Because defendant placed a camera at Starbucks

over a two-day period, which involved 18 or 19 victims, and later committed a burglary, the court found "this is more than a one time thing. This indicates that this behavior went on for some period of time." The trial court acknowledged that defendant had sought treatment, but found that "there's a history of mental illness and some significant problems with sexual gratification and no one can say for sure that these are things that can be cured. So while the doctors opine that his risk of re offending may be low, that's not zero. So I think it's appropriate for the safety of the community and the safety of these victims to impose the lifetime registration."

This timely appeal followed.

## DISCUSSION

1.  **The Trial Court Applied the Proper Legal Standard and Did Not Abuse Its Discretion in Ordering Lifetime Sex Offender Registration**

Section 290.006 gives the trial court discretion to require sex offender registration for persons convicted of offenses not enumerated in section 290, which requires mandatory registration for specified offenses. (See also *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197 (*Hofsheier*).) Discretionary registration may be ordered "if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." (§ 290.006.) The premise behind sex offender registration legislation is that "sex offenders pose a 'continuing threat to society'. . . ." (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.) As such, one of the purposes of the registration requirement is " ' " 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' " ' [Citations.]" (*Hofsheier, supra*, at p. 1196.) An alternative purpose for sex offender registration is "to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*Ibid.*)

In *Hofsheier*, the California Supreme Court clearly stated the process to be applied by lower courts when exercising discretion to order lifetime sex offender registration under section 290.006. "[T]he trial court must engage in a two-step process: (1) it must

find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.)

"By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) In exercising its discretion under the second prong of the *Hofsheier* analysis, the trial court should "consider all relevant information available to it at the time it makes its decision." (*People v. Garcia* (2008) 161 Cal.App.4th 475, 483, disapproved on other grounds by *People v. Picklesimer* (2010) 48 Cal.4th 330, 338, fn. 4.) One relevant inquiry is whether defendant is likely to reoffend in the future. (*People v. Garcia,* at p. 485 ["information regarding the defendant's behavior since the time of his original sentencing certainly is relevant to the determination as to the likelihood he will reoffend and the necessity for registration"]; see also *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431.)

Defendant does not contend the trial court erred in finding that his crimes were committed for the purpose of sexual gratification. However, defendant complains the trial court abused its discretion in ordering defendant to register as a sex offender because it applied a "zero risk" standard to explain its reasons for ordering registration under the second prong of the *Hofsheier* analysis. Alternatively, defendant argues the trial court abused its discretion under the proper standard because it did not find that defendant was likely to reoffend in the future. We find the trial court applied the proper standard, and did not abuse its discretion.

We review the trial court's ruling for an abuse of discretion. (See *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 79 (*Lewis*).) A trial court abuses its discretion if it applies an incorrect legal standard when making its decision. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.) If the trial court applies the correct legal standard,

"[b]road deference must be shown to the trial judge. The reviewing court should interfere only ' "if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." [Citations.]' [Citation.]" (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) The trial court's ruling will be affirmed unless it is "arbitrary, capricious or patently absurd." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

In explaining its reasons for ordering registration, the trial court noted that defendant did not simply commit one offense; his behavior continued "for some period of time" and involved numerous victims. Defendant recorded a number of females in the restroom over a period of two days, downloading approximately 35 videos onto his computer. About a week later, defendant broke into an apartment to steal women's underwear and tampon applicators. Defendant was diagnosed with mental illnesses that may compromise his ability to refrain from reoffending. The trial court explained that in weighing all of the above information, it seemed appropriate for the "safety of the community" and "safety of these victims" to impose lifetime registration. The trial court also noted that "while the doctors opine on the risk of reoffending may be low, that's not zero."

We disagree with the defendant's and the dissent's characterization of the standard applied by the trial court as "zero risk," as it ignores all of the other statements made by the court on the record. The trial court's statement was made in the course of explaining at some length the court's reasons for ordering lifetime registration. We understand the court's comments to mean that although some doctors had opined the risk of recidivism was low, defendant nonetheless had been diagnosed with multiple, serious mental illnesses, and there remained a risk of reoffending.

Moreover, defendant's reliance on *Lewis, supra,* 169 Cal.App.4th 70, for the proposition that the trial court was required to find he was *likely* to reoffend in the future, is misplaced. *Lewis* does not hold that section 290.006 requires some specific quantum of risk of reoffending. Rather, the lifetime registration requirement there was deemed

improper because there was absolutely no evidence in the record indicating that the defendant would commit another sexual offense in the future. (*Lewis,* at p. 79.)[3]

Here, there is ample evidence that defendant poses a risk of reoffending. Defendant's crimes had already escalated when he burglarized an apartment to steal items for his sexual gratification. Although defendant was receiving treatment after his arrest, he still suffered from the mental health problems that led him to offend in the first place, and that required continuing treatment. The trial court weighed the evidence before it and determined that, notwithstanding the significant improvements defendant had made in therapy, defendant's mental illness compromised his ability to refrain from reoffending, and therefore defendant posed a significant enough risk to the safety of the community that registration was warranted. The trial court properly relied on defendant's repeated conduct, severe sexual gratification issues, and history of mental illness when imposing the registration requirement. The trial court was not required to accept as true the experts' opinions that defendant would be able to control his compulsive sexual behavior with ongoing treatment and monitoring. (*Hofsheier, supra,* 37 Cal.4th at p. 1197; see also *People v. Garcia, supra,* 161 Cal.App.4th at p. 483.) Accordingly, we find no abuse of discretion on this record.

---

[3]    In *Lewis,* the defendant was originally ordered to register under the mandatory provisions of section 290 when he was convicted in 1987 of two counts of oral copulation with a minor. In 2006, *Hofsheier* was decided, and it found mandatory registration under section 290 for voluntary oral copulation with a minor violated equal protection. Defendant filed a motion in the trial court to set aside the order requiring his registration under section 290 under *Hofsheier.* He also argued that discretionary registration under section 290.006 was not warranted because he had not reoffended in the 20 years since his conviction. (*Lewis, supra,* 169 Cal.App.4th at pp. 73-75.) The trial court denied his motion, finding registration was appropriate under section 290.006. The appellate court reversed, concluding there was nothing in the record to suggest the defendant would reoffend even in 1987, when he had originally been sentenced under section 290. The court also found that "in the 20 plus years since his conviction under section 288a, subdivision (b)(1), Lewis has committed no offenses requiring him to register as a sex offender and no offenses similar to those requiring registration." (*Lewis,* at p. 79.)

2.    **Defendant Did Not Have a Right to a Jury Trial of the Facts Underlying the Trial Court's Discretionary Registration Decision**

Defendant contends his right to a jury trial was violated when the trial court determined the truth of the facts underlying its order requiring him to register as a sex offender. We disagree.

*Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490.) The California Supreme Court previously held *Apprendi* does not apply to sex offender registration because it "is not considered a form of punishment under the state or federal Constitution." (*Hofsheier, supra,* 37 Cal.4th at p. 1197; see also *People v. Picklesimer, supra,* 48 Cal.4th at pp. 343-344 [*Apprendi* does not apply to a discretionary determination to require sex offender registration under section 290.006].)

However, since these cases were decided, Jessica's Law was passed, which amended our Penal Statutes relating to sex offenders.[4] One of these amendments included the addition of a residency restriction for registered sex offenders. All registered sex offenders in California are now barred from residing within 2,000 feet of a

---

[4]    "[V]oters enacted Proposition 83, The Sexual Predator Punishment and Control Act: Jessica's Law (Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006); hereafter Proposition 83 or Jessica's Law). Proposition 83 was a wide-ranging initiative intended to 'help Californians better protect themselves, their children, and their communities' [citation] from problems posed by sex offenders by 'strengthen[ing] and improv[ing] the laws that punish and control sexual offenders' [citation]. [¶] Among other revisions to the Penal Code, Proposition 83 amended section 3003.5, a statute setting forth restrictions on where certain sex offenders subject to the lifetime registration requirement of section 290 may reside. New subdivision (b), added to section 3003.5, provides: 'Notwithstanding any other provision of law, it is unlawful for any person for whom registration is required pursuant to Section 290 to reside within 2000 feet of any public or private school, or park where children regularly gather.' (§ 3003.5, subd. (b) . . . .) The new residency restrictions took effect on November 8, 2006, the effective date of Proposition 83." (*In re E.J.* (2010) 47 Cal.4th 1258, 1263, fns. omitted.)

school or park where children gather. (§ 3003.5, subd. (b).) In *People v. Mosley* (review granted Jan. 26, 2011, S187965), the Fourth District Court of Appeal concluded that the residency restriction constitutes punishment and that *Apprendi* now mandates a jury trial on the facts supporting the discretionary imposition of sex offender registration. Our Supreme Court granted review of the *Mosley* decision, and will soon consider whether the residency restriction is an increase in penalty implicating the right to a jury trial.

Respondent contends defendant forfeited his *Apprendi* claim by failing to raise it in the trial court. (See *People v. Marchand* (2002) 98 Cal.App.4th 1056, 1060-1061.) However, a defendant's failure to object below does not preclude the claim that he was denied the constitutional right to a jury trial on appeal. (*People v. French* (2008) 43 Cal.4th 36, 46; see also *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [court may review constitutional errors without objection].) Moreover, at the time defendant was sentenced, *Mosley* was pending before our Supreme Court, and therefore the law was (and still is) unsettled. A change in the law may excuse counsel's failure to object at trial. (*People v. Black* (2007) 41 Cal.4th 799, 811 [we consider the " 'state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial' "].) Because the application of *Apprendi* to section 290.006 was unsettled at the time defendant was sentenced, we find that a competent attorney would not necessarily have made an objection on this basis, and in any event, that we have discretion to review defendant's constitutional claim. Therefore, the issue has not been forfeited.

Here, defendant admits his crimes were committed for the purpose of sexual gratification,[5] but he contends the jury was required to make "the factual findings supporting the court's discretionary decision to impose registration" under the second

---

[5]     Defendant admitted he made the hidden restroom recordings at the Starbucks out of sexual frustration and that this was a "fetish" of his. In addition, defendant admitted he stole the underwear from the apartment so that he could later use them for masturbation. Further, defendant admits that even if it was error to not try these facts to a jury, any error would necessarily be harmless. We agree. There is extensive evidence his crimes were committed for the purpose of sexual gratification.

prong of the *Hofsheier* analysis. Specifically, defendant argues a jury was required to decide the likelihood he would reoffend. Not so.

The second prong of *Hofsheier* only requires "[the court to] state the reasons for requiring lifetime registration as a sex offender." (*Hofsheier, supra*, 37 Cal.4th at p. 1197.) Ultimately, "the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*Ibid.*) In our view, this determination is not subject to *Apprendi*'s requirements. "[T]he scope of the constitutional jury right must be informed by the historical role of the jury at common law." (*Oregon v. Ice* (2009) 555 U.S. 160, 170; *id.* at p. 168 [*Apprendi* does not apply to the decision to impose consecutive sentences on a defendant convicted of multiple offenses, because the "historical record demonstrates that the jury played no role in the decision to impose sentences consecutively or concurrently. Rather, the choice rested exclusively with the judge."].) A decision about whether to order registration is a determination based upon judicial findings about the nature of the offense and defendant's character. (See *Hofsheier, supra*, 37 Cal.4th at p. 1197.) The assignment to a judge of such a determination does not "implicate[] *Apprendi*'s core concern: a legislative attempt to 'remove from the [province of the] jury' the determination of facts that warrant punishment for a specific statutory offense." (*Oregon v. Ice*, at p. 170.) "[A]s *Apprendi*'s core concern is inapplicable to the issue at hand, so too is the Sixth Amendment's restriction on judge-found facts." (*Ibid.*)

Moreover, we disagree with *Mosley*'s reasoning because it is inconsistent with other Supreme Court authority. In *In re E.J., supra*, 47 Cal.4th at page 1278, a group of parolees who had been convicted before enactment of Jessica's Law, but paroled after it became effective, claimed applying the residency restriction to them constituted an impermissible retroactive application of the statute and violated the prohibition on ex post facto laws. (*In re E.J.,* at p. 1264.) Our Supreme Court concluded that because the new residency restrictions are not punitive, they do not trigger *Apprendi*. (*In re E.J.*, at p. 1278 ["Although [petitioners] fall under the new restrictions by virtue of their *status* as registered sex offenders who have been released on parole, they are not being

11

'additionally punished' for commission of the original sex offenses that gave rise to that status. Rather, petitioners are being subjected to new restrictions on where they may reside while on their *current parole* – restrictions clearly intended to operate and protect the public *in the present*, not to serve as additional punishment for past crimes."]; see also *People v. Picklesimer, supra*, 48 Cal.4th at p. 344 [noting that a hypothetical assuming Proposition 83's restrictions constituted punishment would be contradicted by the reasoning of *In re E.J.*].) This reasoning is equally applicable under the present circumstances. Therefore, we are not persuaded that defendant's right to a jury trial was violated.

## DISPOSITION

The judgment is affirmed.

GRIMES, J.

I CONCUR:

BIGELOW, P. J.

**People v. Velasco**

**B239192**

**Flier, J., Dissenting**

Because I conclude the trial court abused its discretion in ordering Velasco to register for life as a sex offender I respectfully dissent.

*A. Background*

*1. The Offenses*

Velasco pled guilty to 14 counts of disorderly conduct, one count of burglary, and one count of possession of a burglar's tools. It was alleged that the disorderly conduct occurred on April 14 and April 15, 2011, that the burglary occurred April 18, 2011, and that the possession of burglar's tools occurred May 4, 2011. The majority opinion comprehensively describes the facts underlying the convictions.

The court sentenced Velasco to four years in state prison for the burglary with all other terms to run concurrently. The court exercised its discretion to order Velasco to register as a sex offender pursuant to Penal Code section 290.006.[1]

At the time of his offenses Velasco was a 25-year-old graduate student with no criminal history. Velasco sought mental health treatment immediately upon his release on bail. Velasco clearly had the support of his family and friends as 26 of Velasco's relatives and friends wrote letters on his behalf. The letters uniformly described Velasco's conduct underlying his convictions as an aberration.

*2. Opinions of Velasco's Likelihood to Reoffend*

Velasco's psychologist Bill Bercaw, who held a doctorate in clinical psychology and was a certified sex addiction therapist, described Velasco as having depressive symptoms and isolating himself from others *prior* to the crimes. Bercaw described

---

[1]    Undesignated statutory citations are to the Penal Code.

Velasco's progress in treatment as follows: Velasco "diligently embraced his treatment as an opportunity to reorder his life and to atone for his transgressions. He was very aggressive with his treatment, completing demanding homework assignments week after week and doing everything I asked him to do. Throughout our therapeutic process, William has struggled mightily with deep feelings of guilt and shame for his offenses." "One of the most challenging processes for William therapeutically was overcoming his isolating tendencies, especially while he was so ashamed of himself. I witnessed William courageously begin to allow others in, as he developed a support system that has become very meaningful to him. The combination of his strong motivation for treatment, his much improved emotional health and his much improved support system allow me to confidently project ongoing improvement." Bercaw opined that Velasco was "highly unlikely to repeat his offenses . . . ."

Velasco's psychiatrist Dr. Timothy Fong, a clinical professor at the University of California Los Angeles, treated Velasco since June 2011. Fong was certified in psychiatry and addiction psychiatry and served as the director of the Impulse Control Disorders Clinic and the Addiction Medicine Clinic at the University of California Los Angeles. Fong diagnosed Velasco as suffering from compulsive sexual behavior, major depressive disorder, and social anxiety disorder. Fong described Velasco's progress as follows: "William has made significant improvements in his recovery and overall stability. He has been compliant with all of the treatment recommendations that I have made, and he remains highly motivated to stay active in treatment. He has built a strong network of support that will increase the likelihood of him continuing to improve." Velasco was assessed to be "a low risk of recidivism, and is believed not to be a danger to the community." "In the six months that I have worked with him, William has made notable improvements. He is now aware of the signs and symptoms of compulsive sexual behaviors, depression and anxiety and is able to identify triggers that formerly led him to acting out. He has a much stronger and deeper understanding of his disease and has been working on developing coping skills and on behavioral techniques to keep his symptoms from expanding."

According to Fong, Velasco's "motivation to continue to do the work to stay in recovery is very high. He has expressed significant remorse and guilt about his actions and has accepted responsibility for what he's done. This, too, is another strong prognostic sign that he understands and accepts his diagnosis." Fong opined that "had William been able to enter treatment before this offense, the likelihood that this offense would have occurred would have been essentially zero. His behaviors, in my opinion, were a direct result of untreated symptoms of compulsive sexual behavior. These symptoms can be controlled very well with ongoing treatment and monitoring (which he currently has in place)."

Dr. Nathan Lavid, a forensic psychiatrist opined that Velasco has "responded well to treatment . . . . In addition, Mr. Velasco has good insight and good judgment regarding the continued need for treatment." Dr. Lavid opined that Velasco's "risk of recidivism is low and he does not pose a danger to the community." Velasco did not show factors indicative of risk of violence "such as lack of insight, negative attitudes, active symptoms of major mental illness, impulsivity, and being unresponsive to treatment." Dr. Lavid opined that at the time of the interview Velasco's sexual addiction was in remission.

In addition to seeing Drs. Bercaw, Fong, and Lavid, Velasco completed an intensive outpatient program at the Sexual Recovery Institute. While at the institute, Velasco "was thoroughly compliant, performed all assignments and was actively engaged during individual, family and group psychotherapy sessions." Velasco "initiated insightful comments without prompting." He also followed this program by consistently attending 12-step support groups.

It is significant that there was no evidence contradicting the opinions of Drs. Bercaw, Fong and Lavid. No evidence was presented supporting the inference that at the time of sentencing Velasco was likely to reoffend.

*3. Sentencing Hearing*

The court ordered Velasco "to register for the rest of his life as a sex offender . . . ." "This is pursuant to . . . section 290.006 where I can impose the 290 registration if I find that the crimes were clearly committed for the purposes of sexual

gratification. I find that under this case the first degree burglary was committed primarily for that purpose . . . . [¶] The crime placing the camera in the Starbucks to watch these women and children females use the bathroom I think were clearly designed for sexual gratification . . . ."

The court later reaffirmed that it imposed the registration requirement because the crimes were committed for sexual gratification. The court explained: "The reason for the lifetime registration is that there's no doubt in my mind that these crimes were committed for the purpose of sexual gratification, and in looking at a first degree burglary, which is a serious crime, the defendant entered the apartment of these two young ladies, or three young ladies, for the primary purpose of stealing their underwear. Very bizarre in and of itself, but that – and placing the camera in the Starbucks for a period of time where at least 19 victims were identified, or 18, or perhaps more, this is more than a one time thing. This indicates that this behavior went on for some period of time, and I think there was even testimony at the preliminary hearing that . . . the defendant would utilize a laptop in the lobby of the Starbucks and go to the bathroom to change a disc or card or something that was connected to the camera. So that and looking at the defendant's mental health issues, and his efforts to seek treatment, which I appreciate on the one hand, but on the other hand there's a history of mental illness and some significant problems with sexual gratification and no one can say for sure that these are things that can be cured. So while the doctors opine that his risk of re offending may be low, that's not zero. So I think it's appropriate for the safety of the community and safety of these victims to impose the lifetime registration."

## B. Analysis

Section 290.006 provides the court with discretion to impose a lifetime registration under section 290.[2] The purpose of the section 290 registration requirement is to assure

---

[2]     Section 290.006 provides: "Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual

4

convicted persons are """"readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future"""" and "to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1196.) When, as in this case, the court has discretion to impose the registration requirement the court

---

gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration."

Section 290, subdivision (b) provides: "Every person described in subdivision (c), for the rest of his or her life while residing in California, or while attending school or working in California, as described in Sections 290.002 and 290.01, shall be required to register with the chief of police of the city in which he or she is residing, or the sheriff of the county if he or she is residing in an unincorporated area or city that has no police department, and, additionally, with the chief of police of a campus of the University of California, the California State University, or community college if he or she is residing upon the campus or in any of its facilities, within five working days of coming into, or changing his or her residence within, any city, county, or city and county, or campus in which he or she temporarily resides, and shall be required to register thereafter in accordance with the Act."

Mandatory registration is required for "[a]ny person who, since July 1, 1944, has been or is hereafter convicted in any court in this state or in any federal or military court of a violation of Section 187 committed in the perpetration, or an attempt to perpetrate, rape or any act punishable under Section 286, 288, 288a, or 289, Section 207 or 209 committed with intent to violate Section 261, 286, 288, 288a, or 289, Section 220, except assault to commit mayhem, subdivision (b) and (c) of Section 236.1, Section 243.4, paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262 involving the use of force or violence for which the person is sentenced to the state prison, Section 264.1, 266, or 266c, subdivision (b) of Section 266h, subdivision (b) of Section 266i, Section 266j, 267, 269, 285, 286, 288, 288a, 288.3, 288.4, 288.5, 288.7, 289, or 311.1, subdivision (b), (c), or (d) of Section 311.2, Section 311.3, 311.4, 311.10, 311.11, or 647.6, former Section 647a, subdivision (c) of Section 653f, subdivision 1 or 2 of Section 314, any offense involving lewd or lascivious conduct under Section 272, or any felony violation of Section 288.2; any statutory predecessor that includes all elements of one of the above-mentioned offenses; or any person who since that date has been or is hereafter convicted of the attempt or conspiracy to commit any of the above-mentioned offenses." (§ 290, subd. (c).)

must "weigh the reasons for and against registration in each particular case." (*Id.* at p. 1197.)

As the majority acknowledges, the likelihood of reoffending is the primary consideration in evaluating whether registration should be ordered. (*People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431 ["Most importantly, the trial court must consider the likelihood defendant will reoffend."].) "Where registration is discretionary, then, one consideration before the court must be the likelihood that the defendant will reoffend." (*People v. Garcia* (2008) 161 Cal.App.4th 475, 485, disapproved on other grounds in *People v. Picklesimer* (2010) 48 Cal.4th 330, 338, fn. 4.) Thus, in *Garcia*, the case was remanded for the trial court to consider "the evidence defendant presented as to his good behavior and rehabilitation" in order to determine whether the defendant was likely to reoffend. (*Garcia*, at p. 485.)

Here, both the trial court and the majority ignore the evidence Velasco presented as to his good behavior and rehabilitation and instead focus only on defendant's crimes, emphasizing that they included a burglary to steal items for sexual gratification. The narrow focus on Velasco's conduct April 14 thru April 18, 2011, ignores the critical question -- whether by the time of sentencing Velasco had rehabilitated himself to such an extent that he was not likely to reoffend. In evaluating whether lifetime registration was warranted, the court should have considered the evidence subsequent to Velasco's convictions. (*People v. Garcia, supra*, 161 Cal.App.4th at p. 483 [trial court erred in concluding it could not consider circumstances subsequent to the defendant's convictions].)

Once the relevant evidence is considered, the only available conclusion is that Velasco was not likely to reoffend. The undisputed evidence showed that he was a low risk of offending. Every physician and psychologist who evaluated Velasco determined that he posed a low risk of recidivism. No contrary evidence was introduced and no evidence supported the trial court's conclusion that defendant posed a risk of reoffending. Although the trial court was not required to accept the experts' opinions, it did not question their credibility. Instead, it simply determined that "while the doctors opine that

his risk of re offending may be low, that's not zero." The "not zero" standard, however, is not supported by any case law. Its application effectively would turn the discretionary registration requirement into a mandatory one because no defendant would be able to show a zero percent chance of recidivism. Because the undisputed evidence showed that at the time of sentencing defendant was not likely to commit a sex offense, I would reverse the lifetime registration requirement. (See *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 79 [order the court to relieve the defendant of any sex offender registration requirement where "nothing in the record" supported a finding that he was likely to commit a sex offense].)

FLIER, J.

# S219234 - PEOPLE v. VELASCO

Edit Case **Information** / **Title & Caption**

—Appeal/CR/Review - Criminal Appeal ::: ram—
Status: case closed

Lower Court: COURT OF APPEAL, SECOND APPELLATE DISTRICT
Lower Court Case: B239192
Lower Court Judgment Date: 04/29/2014

## Docket **Add Docket Event**   **Docket Sheets**

View Type: All    Code: All   Brief? ☐   [Search]   [Show Advanced]

| ↓# | ↑Date | Code | Description | Due Date | ↓Type |
|---|---|---|---|---|---|
| 90 | 08/22/2014 | rrc | Returned record | | D |
| | | | 1 doghouse | | |
| 80 | 08/13/2014 | rvd | Petition for review denied  D1 | | D |
| | | | The petition for review is denied without prejudice to any relief to which defendant might be entitled after this court decides People v. Mosley, S187965. | | |
| 70 | 08/06/2014 | ext | Time extended to grant or deny review  D1 | | D |
| | | | The time for granting or denying review in the above-entitled matter is hereby extended to and including September 9, 2014, or the date upon which review is either granted or denied. | | |
| 50 | 07/17/2014 | rar | Received Court of Appeal record | | D |
| | | | one doghouse | | |
| 30 | 07/15/2014 | rr1 | Record requested | | D |
| 10 | 06/11/2014 | prf | Petition for review filed  D1 | | D |
| | | | William Zafra Velasco, Jr., Defendant and Appellant Christopher Allan Nalls, CA appointed | | |
| | | | pursuant to CRC, rule 8.25(b) | | |

© 2003-2014 Judicial Council of California

IN THE SUPREME COURT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | S_____ |
| Plaintiff and Respondent, | |
| v. | Court of Appeal No. B239192 |
| WILLIAM ZAFRA VELASCO JR., | Superior Court No. KA094631 |
| Defendant and Appellant. | |

## PETITION FOR REVIEW

From a decision of the Court of Appeal
Second Appellate District, Division Eight
Filed April 29, 2014

Appeal from the Superior Court of Los Angeles County
Honorable Steven D. Blades, Judge

CHRISTOPHER NALLS
California Bar No. 246627
Law Office of Christopher Nalls
107 S. Fair Oaks Avenue, Suite 309
Pasadena, CA 91105
(626) 844-0443 (phone)
(626) 844-0445 (fax)
chris@christophernalls.com

Attorney for Appellant
WILLIAM ZAFRA VELASCO JR.



# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................. iii

PETITION FOR REVIEW............................... 1

STATEMENT OF THE CASE AND FACTS.................. 3

GROUNDS FOR REVIEW............................... 4

   I.    This Court Should Grant Review to Provide Guidance
       On the Exercise of Discretion Under Penal Code
       Section 290.006, and the Quantum of Risk of
       Reoffense Required to Order Sex Offender
       Registration Under that Section.................. 4

      A.   This Court has never offered guidance on
          exercising discretion pursuant to Penal Code
          section 290.006.......................... 4

      B.   Lower courts have been inconsistent in
          exercising discretion under section 290.006, and
          Court of Appeal decisions are in conflict about
          the proper considerations and their weight..... 7

      C.   This Court should grant review to provide
          guidance to lower courts.................. 16

      D.   Even if this Court overrules the equal
          protection holding of *Hofsheier*, section 290.006
          will still stand and trial courts will still need
          guidance in making discretionary registration
          decisions............................... 18

   II.   This Court Should Grant Review and Reverse the
       Order of Lifetime Sex Offender Registration Because
       the Order Was an Abuse of Discretion........... 20

      A.   The trial court abused its discretion by using an
          incorrect legal standard: "not zero."........ 20

B.   The trial court abused its discretion by ordering registration in the absence of evidence that appellant was likely to reoffend.. . . . . . . . . . 24

C.   This Court should grant review and reverse.. 27

III.   This Court Should Grant Review Because the Trial Court Violated Appellant's Sixth Amendment Right to Jury Trial by Imposing Sex Offender Registration Based on Facts Not Admitted by the Defendant or Found by a Jury Beyond a Reasonable Doubt.. . . . . 28

A.   It would be appropriate to grant review on this issue pursuant to rule 8.512(d)(2).. . . . . . . . . 28

B.   The Sixth Amendment provides that any fact which aggravates the penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt.. . . . . . . . . . . . . . . . . . . . . . 29

C.   California sex offender registration, and specifically the residency restrictions in Jessica's Law, constitutes punishment within the meaning of the Sixth Amendment.. . . . . . 31

D.   Because the order of sex offender registration increased appellant's punishment, its imposition based on factual findings by the trial court prejudicially violated appellant's Sixth and Fourteenth Amendment right to a jury trial.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

WORD COUNT CERTIFICATE. . . . . . . . . . . . . . . . . . . . . . . 40

APPENDIX (court copies only).. . . . . . . . . . . . . . . . . . . . . . . 41

# TABLE OF AUTHORITIES

## CASES

*Alleyne v. United States* (June 17, 2013) 133 S.Ct. 2151. . . . . . . 31

*Apprendi v. New Jersey* (2000) 530 U.S. 466. . . . . . . . . . . . . . . 3, 30

*Blakely v. Washington* (2004) 542 U.S. 296. . . . . . . . . . . . . . . . . 30

*Chapman v. California* (1967) 386 U.S. 18. . . . . . . . . . . . . . . . . 38

*Hatton v. Bonner* (9th. Cir. 2003) 356 F.3d 955. . . . . . . . . . . . . . 35

*In re Alva* (2004) 33 Cal.4th 254. . . . . . . . . . . . . . . . . . . . . 24, 31

*In re Birch* (1973) 10 Cal.3d 314. . . . . . . . . . . . . . . . . . . . . . . . 32

*In re E.J.* (2010) 47 Ca1.4th 1258. . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Large* (2007) 41 Cal.4th 538. . . . . . . . . . . . . . . . . . . . . . . . 25

*Johnson v. California Department of Justice,*
   review granted May 1, 2013, S209167. . . . . . . . . . . . . . 18, 19

*Lewis v. Superior Court* (2008) 169 Cal.App.4th 70. . . 9, 10, 21, 24

*McAllister v. State* (Ala.Ct.App. 1968) 214 So.2d 862. . . . . . . . . . 22

*Neder v. United States* (1999) 527 U.S. 1. . . . . . . . . . . . . . . . . . . 38

*People v. Ballinger* (Dec. 14, 2011, C067856)
   [nonpub. opn.]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*People v. Barker* (2004) 34 Cal.4th 345. . . . . . . . . . . . . . . . . . . . 25

*People v. Bolton* (1979) 23 Cal.3d 208. . . . . . . . . . . . . . . . . . . . . 18

*People v. Castellanos* (1999) 21 Cal.4th 785. . . . . . . . . . . . . . 32, 33

*People v. Dunn* (June 27, 2012, H037322) [nonpub. opn.]. . . 14, 15

*People v. Garcia* (2008) 161 Cal.App.4th 475. . . . . . . . . . . 7-9, 21

*People v. Gutierrez* (June 12, 2009, A120100)
[nonpub. opn.]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*People v. Hofsheier* (2006) 37 Cal.4th 1185 . .5, 6, 19, 23-25, 32, 33

*People v. Lopez* (Nov. 7, 2011, B225832) [nonpub. opn.]. . . . . 12, 13

*People v. Monroe* (1985) 168 Cal.App.3d 1205. . . . . . . . . . . . . . 31

*People v. Mosley* (2010) 188 Cal.App.4th 1090,
review granted Jan. 26, 2011, S187965. . . . . . . . . 11, 12, 28

*People v. Picklesimer* (2010) 48 Cal.4th 330. . . . . . . . . . . . . 5, 33

*People v. Russel* (1968) 69 Cal.2d 187. . . . . . . . . . . . . . . . . 17, 27

*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968. . . 17, 18

*People v. Thompson* (2009) 177 Cal.App.4th 1424. . . . . . . . 11, 21

*People v. Warner* (1978) 20 Cal.3d 678. . . . . . . . . . . . . . . . . . 18

*Smith v. Doe* (2003) 538 U.S. 84. . . . . . . . . . . . . . . . . . . . . . 34, 37

*Wright v. Superior Court* (1997) 15 Cal.4th 521. . . . . . . . . . . . 32

## CONSTITUTIONS

U.S. Constitution, 6th Amendment . . . . . . . . . . . . . . . . . . . . . 29

U.S. Constitution, 14th Amendment . . . . . . . . . . . . . . . . . . . . . 29

## STATUTES

Penal Code, § 290. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Penal Code, § 290.006. . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 18, 24, 32

Penal Code, § 3003.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 37

Stats. 1947, ch. 1124, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Stats. 1996, ch. 908, § l(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## OTHER AUTHORITIES

Cal. Rules of Court, rule 8.500(b)(1). . . . . . . . . . . . . . . . . . . . . . 17

Cal. Rules of Court, rule 8.512(d)(2). . . . . . . . . . . . . . . . . . . . . . 29

Dworkin, *The Model of Rules* (1967) 35 U. Chi. L.Rev. 14. . . . . . 25

Proposition 83, § 31. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-36

# IN THE SUPREME COURT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM ZAFRA VELASCO JR.,<br><br>    Defendant and Appellant. | S_____<br><br>Court of Appeal<br>No. B239192<br><br>Superior Court<br>No. KA094631 |

## PETITION FOR REVIEW

To the Honorable Tani Cantil-Sakauye, Chief Justice of California, and to the Honorable Associate Justices of the Supreme Court of California:

Defendant and appellant William Zafra Velasco Jr. respectfully petitions this Court for review pursuant to rule 8.500(a)(1) of the California Rules of Court. This petition follows the unpublished decision of the Court of Appeal, Second Appellate District, Division Eight, filed on April 29, 2014. A copy of the majority and dissenting opinions of the Court of Appeal are attached as an Appendix. No petition for rehearing was filed.

1

## ISSUES PRESENTED FOR REVIEW

Appellant, a young graduate student, pled guilty to burglary and several misdemeanors, the facts of which made him potentially subject to sex offender registration under Penal Code section 290.006. Under that section, when a trial court finds an offense was committed as a result of sexual compulsion or for purposes of sexual gratification, it has the discretion to order the defendant to register as a sex offender for life. At appellant's sentencing, he did not dispute that his crimes were committed for purposes of sexual gratification, but asked the court not to impose registration, presenting evidence that he had sought treatment, progressed in treatment, had a large network of supportive family and friends, and that multiple psychological experts deemed him a low risk for reoffense and not a danger to the community. None of this evidence was challenged by the People. Nevertheless, the trial court ordered appellant to register as a sex offender for life, noting that his risk for reoffense was "not zero." Therefore, this petition presents the following issues for review:

    (1)    What factors should a trial court consider in making the decision to order discretionary sex offender registration under Penal Code section 290.006, and

what quantum of risk of reoffense will support an order of registration?

(2) Did the Court of Appeal abuse its discretion by using an incorrect legal standard or by ordering registration in the absence of evidence that appellant was likely to commit a sex offense in the future?

(3) Did imposing discretionary sex offender registration based on facts not admitted by the defendant or found true by a jury beyond a reasonable doubt violate the defendant's right to jury trial within the meaning of *Apprendi v. New Jersey* (2000) 530 U.S. 466?

## STATEMENT OF THE CASE AND FACTS

The procedural and factual summaries in the majority opinion (Appendix, maj. opn. at pp. 2–5) and Justice Flier's dissenting opinion (Appendix, dis. opn. at pp. 1–3) are adequate for purposes of this petition, as supplemented by any additional factual and procedural information set forth in the following argument.

3

# GROUNDS FOR REVIEW

I.  **This Court Should Grant Review to Provide Guidance On the Exercise of Discretion Under Penal Code Section 290.006, and the Quantum of Risk of Reoffense Required to Order Sex Offender Registration Under that Section.**

A.  <u>This Court has never offered guidance on exercising discretion pursuant to Penal Code section 290.006.</u>

When a defendant is convicted of a sex offense listed in section 290, the trial court must order the defendant to register as a sex offender for life. (§ 290.)[1] A defendant convicted of any offense not listed in section 290 can be ordered to register as a sex offender pursuant to section 290.006, which states in its entirety:

> Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration.

(§ 290.006.)[2] An order pursuant to section 290.006 has become known as "discretionary" sex offender registration. (See, e.g.,

---

[1] Unspecified statutory references are to the Penal Code.

[2] The discretionary registration provision used to be part of section 290 itself, but was moved to a separate code section in 2007. (See Stats. 2007, ch. 579, § 14 (SB 172), effective October 13, 2007.)

*People v. Picklesimer* (2010) 48 Cal.4th 330, 335.)

In *People v. Hofsheier* (2006) 37 Cal.4th 1185, this Court noted that section 290.006 "leaves the trial judge with the option of refusing to order registration," even when it finds an offense was committed as a result of sexual compulsion or for purposes of sexual gratification. (*Id.* at p. 1197.) *Hofsheier* stated that

> [b]y requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case.

(*Ibid.*) Because registration is truly discretionary, the defendant can negotiate a plea bargain that allows him to avoid registration. (*Id.* at p. 1198.) This Court explained that a trial court considering registration under section 290.006

> must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender.

(*Id.* at p. 1197.)

*Hofsheier* was not a case about the proper application of section 290.006 per se. This Court held that mandatory lifetime

sex offender registration for violating section 288a, subdivision (b)(1) (by engaging in nonforcible oral copulation with a 16-year-old girl) denied the defendant equal protection of the laws under the United States and California Constitutions, because someone convicted of nonforcible sexual intercourse (rather than oral copulation) with a minor of the same age would not be subject to mandatory registration. (*People v. Hofsheier, supra,* 37 Cal.4th at pp. 1206–1207.) *Hofsheier* held no rational justification supported the disparate treatment of nonforcible oral copulation with a 16- or 17-year-old minor and nonforcible sexual intercourse with a 16- or 17-year-old minor, with respect to the sex offender registration requirements. (*Id.* at pp. 1200–1207.) This Court invalidated the mandatory registration requirement for and remanded the matter so the trial court could determine whether discretionary registration should be imposed. (*Id.* at pp. 1208–1209.)

Although *Hofsheier* described a two-pronged test, the second prong of which requires the trial court to exercise discretion, this Court did not elaborate on what "the reasons for and against registration in each particular case" (*People v. Hofsheier, supra,* 37 Cal. 4th at p. 1197) might be, or what

reasons should always be considered, or what weight should be given to different reasons. And this Court has not subsequently considered the issue.

      B.    <u>Lower courts have been inconsistent in exercising discretion under section 290.006, and Court of Appeal decisions are in conflict about the proper considerations and their weight.</u>

Lower courts have followed *Hofsheier's* two-pronged test, but in the absence of guidance from this Court, courts have differed on the **application** of *Hofsheier's* second prong. Specifically, appellate decisions are in conflict about whether the defendant's risk of reoffense is the only consideration in exercising discretion, the primary consideration, one of many considerations, or whether it need be a consideration at all. And even courts that agree that the risk of offense must be considered, decisions disagree on the quantum of risk sufficient to support an order of registration — whether there must be a likelihood of reoffense, some risk less than a likelihood, or may registration be ordered without a finding of risk at all.

In *People v. Garcia* (2008) 161 Cal.App.4th 475, the defendant was subject to mandatory sex offender registration after pleading guilty in 1985 to oral copulation with a person

under the age of 16 (§ 288a, subd. (b)(2)). (*Id.* at p. 478.) After *Hofsheier* was decided, the defendant asked the trial court to relieve him from mandatory registration and moved for a hearing to determine whether discretionary registration was appropriate. (*Id.* at pp. 478–479.) The trial court denied the motion, stating that if it were to exercise its discretion, it would order discretionary registration. (*Id.* at p. 479.) The trial court acknowledged that the defendant (who had received probation for his offense) had not reoffended in over 20 years, but reasoned that rehabilitation did not justify relief from mandatory registration, and so should not justify relief from discretionary registration. (*Id.* at pp. 479–480.)

The Second District, Division One reversed and remanded for a hearing, holding that when deciding whether to order discretionary registration, the court could consider the defendant's rehabilitation and "all relevant information available to it at the time it makes its decision . . . ." (*Id.* at p. 483.) The court also noted that

> [o]ne of the purposes of the sex offender registration
> requirements is to assure that persons convicted of
> the crimes enumerated therein shall be readily
> available for police surveillance at all times because
> the Legislature deemed them likely to commit similar

> offenses in the future. [Citing *Hofsheier*.] Where
> registration is discretionary, then, **one
> consideration** before the court must be **the
> likelihood that the defendant will reoffend.**

(*Id.* at pp. 484–485, internal quotation marks omitted, emphasis

added.)

In *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, the

Sixth District went further, holding the petitioner could not be

subject to discretionary registration because the **only** basis for

discretionary registration was a risk that the defendant would

commit a sex offense in the future, and there was no such

evidence in the record. (*Id.* at p. 79.) Lewis had been convicted in

1987, but the trial court denied him *Hofsheier* relief, basing its

denial on the facts of Lewis's offense. (*Id.* at p. 75.) The Court of

Appeal reversed, noting that

> [s]ince the purpose of sex offender registration is to
> keep track of persons likely to reoffend, **one of the
> 'reasons for requiring registration' under
> section 290.006 must be that the defendant is
> likely to commit similar offenses** — offenses like
> those listed in section 290 — in the future.

(*Id.* at p. 78, emphasis added.) And in Lewis's case,

> it is undisputed that, in the 20 plus years since his
> conviction under section 288a, subdivision (b)(1),
> Lewis has committed no offenses requiring him to
> register as a sex offender and no offenses similar to
> those requiring registration. Even if we assume that

9

Lewis's 1987 conviction involved his taking advantage of the victim's vulnerable situation, he has not committed a single similar incident since then. **Thus, the only possible basis for imposing a discretionary registration requirement in 2008 would be a finding that it is likely Lewis will start committing such offenses now.** There is nothing in the record to support such a finding.

(*Id.* at p. 79, emphasis added.)

The First District, Division Five took a different approach in *People v. Gutierrez* (June 12, 2009, A120100) [nonpub. opn.], holding that a trial court could order registration even if the defendant was not likely to reoffend. (2009 Cal.App.Unpub. LEXIS 4642, at pp. 10–11.) In *Gutierrez*, the defendant pled guilty to one count of sexual penetration with a foreign object of a person under 18 years of age (§ 289, subd. (h)). (*Id.* at p. 1.) After the trial court imposed discretionary sex offender registration, the defendant argued on appeal that it was an abuse of discretion to order registration "in the absence of a determination that he was likely to reoffend." (*Id.* at pp. 5–6.) The First District affirmed, holding that:

When registration is discretionary, the likelihood that the defendant will commit future sex offenses is certainly an important factor for the court to consider. (*People v. Garcia* (2008) 161 Cal.App.4th 475, 485.) **But section 290.006 does not make the risk of reoffense a sine qua non of discretionary**

10

44

> **registration; it simply requires the court to state its reasons for imposing registration in a particular case. To the extent that *People v. Lewis* (2008) 169 Cal.App.4th 70, 78–80 suggests that one of the "reasons for requiring registration" under section 290.066 must be the risk of reoffense, we respectfully disagree.**

(*Id.* at pp. 10–11, emphasis added.)

Just three months later, the First District, Division One held that the trial court **must** consider the likelihood of reoffense, in *People v. Thompson* (2009) 177 Cal.App.4th 1424. The defendant in *Thompson* was sentenced to mandatory registration; on appeal he argued that under *Hofsheier* he was subject only to discretionary registration. (*Id.* at p. 1428.) The Court of Appeal agreed, remanding for a hearing at which the trial court would exercise its discretion under section 290.006. (*Id.* at p. 1432.) The court noted that "[m]ost importantly, the trial court must consider the likelihood defendant will reoffend." (*Id.* at p. 1431, emphasis added.)

In *People v. Mosley* (2010) 188 Cal.App.4th 1090, review granted Jan. 26, 2011, depublished by, S187965, at the defendant's trial for one count of committing a lewd act upon a child under 14 (§ 288, subd. (a)), the victim (who was 12 years old at the time of the alleged offense) testified that the defendant

partially undressed her and inserted his penis into her vagina. (*Mosely*, at pp. 1096–1097.) After defense counsel's closing argument emphasized inconsistencies between the victim's testimony and the testimony of other witnesses, the jury acquitted the defendant of lewd conduct and convicted him of the lesser offense of simple assault. (*Id.* at pp. 1097–1098.) At sentencing, the court ordered discretionary registration, finding it "appropriate because defendant was physically dangerous to the public, at serious risk to reoffend, and not being treated for his sexual compulsion." (*Id.* at p. 1097.) Although the court considered a psychologist's report finding that the defendant was not a pedophile or sexually violent predator, it dismissed the report as unreliable, basing its finding of risk on the facts of the current offense. (*Id.* at p. 1098.)[3]

In *People v. Lopez* (Nov. 7, 2011, B225832) [nonpub. opn.], the Second District, Division Four, held that the defendant's likelihood of reoffense was only "one of many factors the trial court is to consider," and that registration may be ordered even

---

[3] The defendant in *Mosely* did not challenge the order of registration on appeal as an abuse of discretion, but the Court of Appeal's opinion describes the trial court's considerations in making the order.

without an finding that the defendant is likely to reoffend. (2011

Cal.App. Unpub.LEXIS 8534 at p. 25.) In *Lopez*, the defendant

was charged with one count of continuous sexual abuse of a child

(§ 288.5, subd. (a)), but the jury acquitted him of that charge and

convicted him of the lesser offense of misdemeanor battery

(§ 242). (*Id.* at p. 2.) At sentencing, the court found that the

battery was motivated by sexual desire and imposed discretionary

registration under section 290.006. (*Ibid.*) On appeal, the

defendant argued that the trial court abused its discretion by not

making an explicit finding that he was likely to reoffend. (*Id.* at p.

25.) The Second District held this was not required, stating:

> Nothing in section 290.006 or *People v. Hofsheier* . . .
> requires the trial court to make that specific
> determination. Instead, we interpret decisional law to
> state only that **the likelihood of reoffending is
> one of many factors the trial court is to
> consider** before making an order requiring
> registration.

(*Ibid*, emphasis added.)

But in *People v. Ballinger* (Dec. 14, 2011, C067856)

[nonpub. opn.], the Third District used a "likelihood of reoffense"

standard in affirming the trial court's order of discretionary

registration. (2011 Cal.App.Unpub.LEXIS 9574, at pp. 5–6.) The

defendant argued on appeal that the trial court abused its

discretion in finding that he was likely to reoffend, relying

primarily on *Lewis v. Superior Court, supra*, 169 Cal.App.4th 70.

(*Id.* at p. 4.) The Court of Appeal — apparently using the

standard of *Lewis* — affirmed, stating the evidence "tends to

show that defendant **is likely** commit similar offenses in the

future." (*Id.* at p. 5, emphasis added.) The court held that

> the trial court could reasonably determine that [the
> defendant's] chronic inability to conform his conduct
> to the dictates of the law **is likely to manifest itself
> again in the future with additional sex offenses.**
> It was therefore reasonable for the trial court to
> require lifetime sex offender registration.

(*Id.* at pp. 5–6, emphasis added.)

In *People v. Dunn* (June 27, 2012, H037322) [nonpub. opn.],

the Sixth District held that "that the likelihood of the defendant's

reoffending is **'one consideration,' among others**, that the

court should address [Citation.]." (2012 Cal.App.Unpub.LEXIS

4810, at p. 17, emphasis added.) The Court of Appeal affirmed the

trial court's order of discretionary registration after finding the

defendant had a "moderate risk" of reoffense. (*Id.* at p. 14.) The

court specifically rejected a "likelihood of reoffense" requirement:

> Section 290.006 does not provide that the court must
> make an express finding that a defendant is likely to
> reoffend in requiring registration. Furthermore,
> despite its enunciation of the dual purposes of section

14

> 290—to allow the police to keep track of persons
> convicted of certain crimes and to provide notification
> to the public—the court in *Hofsheier, supra,* 37
> Cal.4th 1185 did not enunciate an extra-statutory
> requirement that courts make an explicit finding
> regarding an offender's potential to reoffend when
> ordering discretionary registration.

(*Id.* at p. 17.)

Finally, the instant case shows that not even the same panel of the Court of Appeal can agree on the applicable legal principles. The majority opinion holds that a trial court does not have to find the defendant is likely to reoffend, and that section 290.006 does not "require[] some specific quantum of risk of reoffending." (Appendix, maj. opn. at p. 7.) The court upheld the trial court's exercise of discretion, stating that "there is ample evidence that defendant poses a risk of reoffending," without ever holding that appellant has a **likelihood** of reoffense. The majority opinion also holds that "[t]he trial court properly relied on defendant's repeated conduct, severe gratification issues, and history of mental illness when imposing the registration requirement." (Appendix, maj. opn. at p. 8.)

But Justice Flier's dissent states that "[b]ecause the undisputed evidence showed that at the time of sentencing defendant was not likely to commit a sex offense, I would reverse

the lifetime registration requirement." (Appendix, dis. opn. at p. 7.) The dissent notes that "the crucial question" was "whether by the time of sentencing Velasco had rehabilitated to such an extent that he was not likely to reoffend." (Appendix, dis. opn. at p. 6.) And because "the only available conclusion is that Velasco was not likely to reoffend," the trial court abused its discretion in ordering registration. (Appendix, dis. opn. at pp. 6–7.)

C.    This Court should grant review to provide guidance to lower courts.

As the foregoing cases illustrate, the Courts of Appeal have taken different views on what is appropriate for a trial court to consider when deciding whether to impose discretionary registration.[4] Is the risk of reoffense the sole consideration, the primary consideration, only one consideration among many, or must it be considered at all? And if the risk of reoffense is considered, what quantum of risk will support an order of lifetime registration? Must it be a likelihood of reoffense, or is a trial court within its discretion to order registration where only a slight risk — or even no risk — of reoffense is shown?

---

[4] Appellant will note that the cases holding that risk of reoffense must be considered tend to be published, while the cases holding that risk of reoffense need not be considered are unpublished.

16

50

The decision to order lifetime sex offender registration for an offense not listed in section 290 — an offense which may not be a sex offense, and which can even be a misdemeanor — is a serious one with monumental, lifetime consequences for a defendant. But in making these important decisions, California's trial courts have taken inconsistent approaches, guided by the standards that each court believes appropriate. Likewise, the Courts of Appeal have not applied the same standard when reviewing for abuse of discretion. This inconsistent application of law on an important issue should not stand; this Court should grant review to secure uniformity of decision and settle an important question of law. (Cal. Rules of Court, rule 8.500(b)(1).)

This Court's guidance is needed. Although trial courts have a great deal of latitude in making discretionary decisions (e.g., *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977), an exercise of discretion must be "guided and controlled in its exercise by fixed legal principles." (*People v. Russel* (1968) 69 Cal.2d 187, 194.) Discretion "is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends

17

(51)

of substantial justice." (*Avarez*, at p. 977, quoting *People v. Warner* (1978) 20 Cal.3d 678, 683.)

But in the absence of any guiding legal principles, lower courts have disagreed and applied section 290.006 inconsistently. "[C]ourts have never ascribed to judicial discretion a potential without restraint." (*People v. Bolton* (1979) 23 Cal.3d 208, 216, citing *Russel*, at p. 194.) Guidance from this Court would not only help Superior Courts exercise their discretion under section 290.006, but it would help the Courts of Appeal review that exercise of discretion. Review is necessary to consider how trial courts should properly exercise discretion under section 290.006.

> D.  <u>Even if this Court overrules the equal protection holding of *Hofsheier*, section 290.006 will still stand and trial courts will still need guidance in making discretionary registration decisions.</u>

In *Johnson v. California Department of Justice*, review granted May 1, 2013, S209167, this Court has ordered supplemental briefing on the following questions:

> Should the court overrule *People v. Hofsheier* (2006) 37 Cal.4th 1185? Among the subsidiary questions counsel may wish to address are the following: 1. What level of equal protection scrutiny applies to the statutory difference in sex offender registration requirements between those convicted of violating Penal Code section 288a and those convicted of violating Penal Code section 261.5? 2. Has *Hofsheier*

presented practical difficulties of application in the trial and appellate courts? 3. Has *Hofsheier* been extended beyond the sex offender registration context in ways that could not have been anticipated at the time of the decision? 4. Absent the limitations on Hofsheier's application asserted in *People v. Manchel* (2008) 163 Cal.App.4th 1108, the validity of which is challenged in the present case, what principles, if any, constrain the application of *Hofsheier*? 5. Does *Hofsheier*'s equal protection analysis logically extend beyond the context of sex offender registration? 6. If *Hofsheier*'s holding is overruled, would and should the court's decision apply retroactively to offenders who have been convicted or released from custody since the decision in *Hofsheier* without registration orders or who have obtained relief by writ petition from preexisting registration requirements?

(*Johnson v. California Department of Justice*, S209167, order of Dec. 18, 2013.) Even if this Court overrules the equal protection holding of *Hofsheier*, section 290.006 will still stand, and so would this Court's observation that "the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*People v. Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) Trial courts will still have to apply the section, and will need guidance in exercising their statutory discretion. Despite what this Court may do in *Johnson*, review should be granted in this case.

II.   **This Court Should Grant Review and Reverse the Order of Lifetime Sex Offender Registration Because the Order Was an Abuse of Discretion.**

A.   The trial court abused its discretion by using an incorrect legal standard: "not zero."

Here, despite uncontradicted expert evidence that appellant was at low risk for reoffense, the trial court ordered registration because the risk of reoffense was "not zero." At appellant's sentencing hearing, the trial court's only remarks on *Hofsheier's* second prong were the following:

> The reason for the lifetime registration is that there's no doubt in my mind that these crimes were committed for the purpose of sexual gratification, and in looking at a first degree burglary, which is a serious crime, the defendant entered the apartment of these two young ladies, or three young ladies, for the primary purpose of stealing their underwear. Very bizarre in and of it self, but that — and placing the camera in the Starbucks for a period of time where at least 19 victims were identified, or 18, and perhaps more, this is more than a one time thing. This indicates that this behavior went on for some period of time, and I think there was even testimony at the preliminary hearing that I held that the defendant would utilize a laptop in the lobby of the Starbucks and go to the bathroom to change a disc or card or something that was connected to the camera. So that and looking at the defendant's mental health issues, and his efforts to seek treatment, which I appreciate on the one hand, but on the other hand there's a history of mental illness and some significant problems with sexual gratification **and no one can say for sure that these are things that can be cured. So while the doctors opine that**

20

(54)

> **his risk of re offending may be low, that's not
> zero. So I think it's appropriate for the safety of
> the community and safety of these victims to
> impose the lifetime registration.**

(RT B16–B17, emphasis added.)

The trial court abused its discretion by using an incorrect, "not zero" legal standard. As the dissent below points out, a "not zero" risk for reoffense is not the applicable legal standard. (Appendix, dis. opn. at p. 7.) Such a standard is not an appropriate ground for an exercise of discretion under section 290.006 and it is not a sufficient reason for ordering registration. Although published Court of Appeal cases have disagreed on the importance and weight of risk of reoffense in exercising discretion, none has used a "not zero" standard. (See *People v. Thompson, supra,* 177 Cal.App.4th at p. 1431 ["the trial court must consider the likelihood defendant will reoffend"]; *Lewis v. Superior Court, supra,* 169 Cal.App.4th at p. 78 ["one of the 'reasons for requiring registration' under section 290.006 must be that the defendant is likely to commit similar offenses — offenses like those listed in section 290 — in the future"]; *People v. Garcia, supra,* 161 Cal.App.4th at pp. 483 ["one consideration before the court must be the likelihood that the defendant will reoffend"].)

The majority's conclusion that the trial court did not use a "not zero" standard (Appendix, maj. opn. at p. 7) is incorrect. Justice Flier's dissent correctly identifies that the trial court **did** use that standard (Appendix, dis. opn. at p. 7). Moreover, the dissent correctly notes that such a standard is impossible to meet; "[i]ts application effectively would turn the discretionary registration requirement into a mandatory one because no defendant would be able to show a zero percent chance of recidivism." (Appendix, dis. opn. at p. 7.) It can never be said of anyone that he or she is at zero risk of remaining free from mental illness or from crime for the rest of his or her life, nor can anyone ever guarantee that a defendant is at **zero** risk for reoffense, no matter his circumstances. "[T]he law yearns for, but does not expect nor require, perfection." (*McAllister v. State* (Ala.Ct.App. 1968) 214 So.2d 862, 863.) A "not zero" standard is meaningless because it would apply in every single case.

Moreover, a "not zero" legal standard is incorrect because it is disconnected from the purpose of sex offender registration, which is to make offenders "readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citations.]"

(*People v. Hofsheier*, *supra*, 37 Cal.4th at p. 1196.) Because

registration is intended to protect the public, the decision to order

registration must be based on the defendant's **actual** likelihood

of reoffense. To say that the defendant has a theoretical chance of

reoffense, and therefore should be forced to register as a sex

offender for the rest of his life, is irrational because the

theoretical chance will always be non-zero.

A consideration of the likelihood of reoffense does not mean

the mere consideration of whether there is **any** likelihood of

reoffense; it entails consideration of the quantity of risk.

Appellant was entitled to an individualized assessment of his

**personal** risk of reoffense. But the standard used by the trial

court was the bluntest of objects, incapable of making an

individualized assessment, capable only of damning all

defendants with the failure to live up to an impossible standard.

The trial court merely looked at whether there was any

theoretical risk of reoffense, and when it decided —

unsurprisingly — there was a non-zero risk, it ordered

registration. The trial court used an incorrect legal standard,

which was an abuse of discretion.

B. <u>The trial court abused its discretion by ordering registration in the absence of evidence that appellant was likely to reoffend.</u>

In addition — and as recognized by the dissent below — the trial court abused it discretion by ordering registration where the only evidence before the court was undisputed evidence that appellant was **not** likely to commit a sex offense in the future. (See Appendix, dis. opn. at pp. 4–7.) As in *Lewis v. Superior Court, supra*, 169 Cal.App.4th at p. 79, "[t]he record does not support the conclusion that [the defendant] is likely to commit" a sex offense in the future, and therefore an order of registration was an abuse of discretion. Under the correct legal standard, reversal is required.

Appellant submits that a **likelihood** of reoffense is the **only** basis for ordering discretionary registration under section 290.006, because it is the only basis connected to the two purposes of sex offender registration: to make offenders "readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future," and "to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*People v. Hofsheier, supra*, 37 Cal.4th at p. 1196, citing *In re Alva*

24

(2004) 33 Cal.4th 254, 264 and *People v. Barker* (2004) 34 Cal.4th 345, 357.) If a defendant is not likely to commit a sex offense in the future, there is no reason to monitor him and warn the public. The purposes of registration would not be served by forcing someone who is not likely to commit a sex offense to suffer the onerous burden of registering as a sex offender for life.

As this Court has noted, in enacting section 290.006, the Legislature intended to give trial courts the discretion to order — or not order — lifetime sex offender registration when it found that a defendant's offense was motivated by sexual gratification or sexual compulsion. (*People v. Hofsheier, supra*, 37 Cal.4th at p. 1197.) "The concept of discretion implies that, at least in some cases, a decision may properly go either way." (*In re Large* (2007) 41 Cal.4th 538, 553.) "[T]here are cases in which an order either way will be sustained on the ground that no abuse of discretion appears." (*Ross v. Ross* (1941) 48 Cal.App.2d 72, 76.) But if there are some cases that may go either way, then there are conceivably some cases that may **not** go either way — cases in which there is only one proper exercise of discretion. (See Dworkin, *The Model of Rules* (1967) 35 U. Chi. L.Rev. 14, 32 ["Discretion, like the hole in a doughnut, does not exist except as

25

an area left open by a surrounding belt of restriction"].) When the Legislature gave trial courts discretion to decline to order registration for a sexually motivated crime, it did so because it recognized that registration would not be appropriate in some cases, even when the offense was sexually motivated.

Appellant's case is such a case. In the eight months between his arrest and his sentencing, he was regularly seen by a psychologist, a psychiatrist, and completed an intensive outpatient program. Appellant's desire to obtain treatment so he would not reoffend was shown in part by the fact that he sought help the day after being released from jail. The evidence before the court at appellant's sentencing compellingly demonstrated that appellant was amenable to treatment, that he understood the factors that caused him to offend, and that he had made significant progress in his treatment. Appellant was strongly supported by a large circle of friends and family. An expert report showed appellant was at low risk of reoffense — a fact that the People did not even attempt to challenge. Notably, the People did not argue, either in their Sentencing Memorandum or at the sentencing hearing, that appellant would be at risk for re-offending. (1 CT 151.)

And critically, the trial court did not make a finding that appellant was likely to reoffend. To the extent that the trial court made a factual finding, it was that appellant's risk of reoffending was "not zero." Not that the risk was great, or modest, or even small; only "not zero." Even the majority opinion below does not claim that appellant is **likely** to reoffend; it merely asserts that "defendant poses a risk of reoffending." (Appendix, maj. opn. at p. 8.)

But this finding is not enough. The proper standard should be that discretionary registration is appropriate — and only appropriate — when the trial court finds the defendant is likely to commit a sex offense in the future. And as noted in the dissent, there is no such evidence here.

### C. This Court should grant review and reverse.

The decision whether or not to impose lifetime sexual registration is one that has monumental effect on a defendant's life — especially a young defendant with an education, a supportive circle of family and friends, and the desire and means to better himself. Appellant is entitled to a proper exercise of discretion, one that is "guided and controlled in its exercise by fixed legal principles." (*People v. Russel, supra,* 69 Cal.2d at p.

27

61

194.) Appellant was denied that right. This Court should grant review and reverse the trial court's order of lifetime sex offender registration.

### III. This Court Should Grant Review Because the Trial Court Violated Appellant's Sixth Amendment Right to Jury Trial by Imposing Sex Offender Registration Based on Facts Not Admitted by the Defendant or Found by a Jury Beyond a Reasonable Doubt.

#### A. It would be appropriate to grant review on this issue pursuant to rule 8.512(d)(2).

The third issue presented is currently being considered by this Court in *People v. Moseley* (2010) 188 Cal.App.4th 1090, review granted Jan. 26, 2011, S187965. The question presented in *Moseley* is:

> Does the discretionary imposition of lifetime sex offender registration, which includes residency restrictions that prohibit registered sex offenders from living 'within 2000 feet of any public or private school, or park where children regularly gather' (Pen. Code, § 3003.5, subd. (b)), increase the 'penalty' for the offense within the meaning of *Apprendi v. New Jersey* (2000) 530 U.S. 466, and require that the facts supporting the trial court's imposition of the registration requirement be found true by a jury beyond a reasonable doubt?

The same issue is dispositive in the instant appeal. Below, the trial court made the factual findings that triggered sex offender registration and the residency restrictions under Jessica's Law.

The trial court made factual findings for both steps in the *Hofsheier* analysis: both the finding that appellant's offenses were committed for the purpose of sexual gratification, and the factual findings supporting the court's discretionary decision to impose registration.

This Court should grant review on all three issues presented. But if the Court declines to grant review on the first and second issues presented, it would still be appropriate to grant review of the third issue on a "grant and hold" basis. (Cal. Rules of Court, rule 8.512(d)(2).)

B.    <u>The Sixth Amendment provides that any fact which aggravates the penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt.</u>

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." The Fourteenth Amendment adds: "nor shall any State deprive any person of life, liberty, or property, without due process of law." These constitutional protections are "of surpassing importance," and taken together they "indisputably entitle a criminal defendant to a jury determination that [he] is

guilty of every element of the crime with which he is charged, beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 476–477, internal quotation marks and citation omitted.)

These protections apply not only to the elements of an offense, but also to factual predicates that result in increased penalty or punishment. The Supreme Court explained in *Apprendi*: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey, supra*, 530 U.S. at p. 490.) In *Blakely v. Washington* (2004) 542 U.S. 296, the Court explained that the "prescribed statutory maximum"

> is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose **without** any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.

(*Id.* at pp. 303–304, citations and quotation marks omitted, italics in original.) Just recently, the Supreme Court expanded

30



*Apprendi*, finding that the right to jury trial applies to **any** fact that aggravates the range of potential punishment — whether it be the maximum sentence or minimum sentence. (*Alleyne v. United States* (June 17, 2013) 133 S.Ct. 2151, 2160.) When a fact "aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury, regardless of what sentence the defendant **might** have received if a different range had been applicable." (*Alleyne*, at p. 2162, emphasis in original.)

    C.    <u>California sex offender registration, and specifically the residency restrictions in Jessica's Law, constitutes punishment within the meaning of the Sixth Amendment.</u>

"California has had some form of sex offender registration requirement since 1947." (*In re Alva, supra*, 33 Cal.4th at p. 264; see Stats. 1947, ch. 1124, § 1.) The basis for the registration requirement is the state interest in controlling crime and preventing recidivism in sex offenders. (E.g., *People v. Monroe* (1985) 168 Cal.App.3d 1205, 1215.) The purpose of the registration requirement is to assure that people subject to the requirement are readily available for police surveillance at all times because the Legislature deems them likely to commit

similar offenses in the future. (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.) More recently, "registration has acquired a second purpose: to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*People v. Hofsheier, supra,* 37 Cal.4th at p. 1196.) As discussed in Part I *supra,* registration can be ordered for defendants who were not convicted of offenses expressly listed in section 290. (§ 290.006.)

This Court has so far held that registration is "regulatory in nature, intended to accomplish the government's objective by mandating certain affirmative acts." (*Wright v. Superior Court, supra,* 15 Cal.4th at p. 527.) However, registration imposes a "substantial" and "onerous" burden on the defendant. (*People v. Hofsheier, supra,* 37 Cal.4th at p. 1197; *People v. Castellanos* (1999) 21 Cal.4th 785, 796; see also *In re Birch* (1973) 10 Cal.3d 314, 322 [characterizing registration as being a "grave" consequence of conviction of an offense requiring such registration].) Also: "When it becomes publicly known that a person is a registered sex offender, the person may be at risk o of losing employment, and may have difficulty finding a place to live." (*Hofsheier,* at p. 1197.) Nevertheless, courts have viewed

this burden is viewed as being no more onerous than necessary to achieve the purpose of the registration requirement. (*Castellanos*, at p. 796.) Registration is not considered to be a form of punishment under the state or federal constitution. (*People v. Picklesimer, supra*, 48 Cal.4th at pp. 343–344; *Hofsheier*, at p. 1197.)

In 2006, California voters adopted an initiative that added residency restrictions for all people subject to sex offender registration. The California Supreme Court succinctly described the origins and nature of this residency restriction as follows:

> On November 7, 2006, the voters enacted Proposition 83, The Sexual Predator Punishment and Control Act: Jessica's Law (Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006); hereafter Proposition 83 or Jessica's Law). Proposition 83 was a wide-ranging initiative intended to "help Californians better protect themselves, their children, and their communities" (*id.*, § 2, subd. (f)) from problems posed by sex offenders by "strengthen[ing] and improv[ing] the laws that punish and control sexual offenders" (*id.*, § 31).
>
> Among other revisions to the Penal Code, Proposition 83 amended section 3003.5, a statute setting forth restrictions on where certain sex offenders subject to the lifetime registration requirement of section 290 2 may reside. New subdivision (b), added to section 3003.5, provides: "Notwithstanding any other provision of law, it is unlawful for any person for whom registration is required pursuant to Section 290 to reside within 2000 feet of any public or private school, or park

where children regularly gather." (§ 3003.5, subd. (b) (section 3003.5(b)).) The new residency restrictions took effect on November 8, 2006, the effective date of Proposition 83.

(*In re E.J.* (2010) 47 Ca1.4th 1258, 1263, footnotes omitted.)

Jessica's Law also authorizes residency restrictions **beyond** the 2000-foot restriction mentioned in section 3003.5, subdivision (b). Subdivision (c) of section 3003.5 provides: "Nothing in this section shall prohibit municipal jurisdictions from enacting local ordinances that further restrict the residency of any person for whom registration is required pursuant to Section 290." The stated intent behind Jessica's Law is to strengthen and improve laws that punish and control sex offenders. (Proposition 83, § 31.) The intent behind the residency restriction is to create a "predator-free zone" around schools and parks to prevent sex offenders from living near where children learn and play. (*In re E.J.*, at p. 1271.)

Appellant submits that the legislative intent of the residency restrictions in Jessica's Law is punitive. The question of legislative intent is one of statutory construction. (*Smith v. Doe* (2003) 538 U.S. 84, 92.) Courts "consider the statute's text and its structure to determine the legislative objective." (*Ibid.*) Courts

34

must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for punishing or regulating. (*Id.* at p. 93.) The intent can sometimes appear in the words of the statute. (*Ibid.*) The intent behind the adoption of Proposition 83, the initiative that adopted Jessica's Law, appears in the words of the initiative. Section 2(t) states: "It is the intent of the People in enacting this measure to help Californians better protect themselves, their children, and their communities; it is not the intent of the People to embarrass or harass persons convicted of sex offenses," Section 31 states, in relevant part: "It is the intent of the People of the State of California in enacting this measure to strengthen and improve the laws that punish and control sexual offenders."

These expressions of intent are very **different** from the expression of intent in the 1996 amendment to the registration requirement which authorized limited public release of information about registered offenders whom law enforcement officials consider a threat to the public. (*Hatton v. Bonner* (9th. Cir. 2003) 356 F.3d 955, 959.) The latter provision expressly states "that in making information available about certain sex offenders to the public, [the Legislature] does not intend that the

information be used to inflict retribution or additional punishment." (*Id.* at p. 962; Stats. 1996, ch. 908, § l(g).) The Ninth Circuit concluded that the Legislature did not intend the information release provision to be punitive. (*Hatton*, at pp. 962–963.).

Taken together, the language in the intent provisions of Jessica's Law shows that the intent behind the law is punitive. Indeed, section 31 expressly uses the term "punish." It is true that section 31 also uses the term "control," and that section 2(f) says the intent is to protect people and communities. But statutes which punish invariably control offenders and protect people and communities by subjecting those who are incarcerated to restrictions on their freedom. Incarceration, for example, is clearly punishment. But it also controls the person who is incarcerated by restricting his movement and activities, and it protects people and communities from the incarcerated offender. The incarcerated person is required to reside in a location that is not of his own choosing. This also can be the case with defendants who are subject to Jessica's Law. It is true that their residency options are not confined to the area within the walls of a prison, but they are required to reside in areas that are not within 2000

36

70

feet of a school or park.

Also relevant to the intent of a provision is the manner of its codification. (*Smith v. Doe, supra*, 538 U.S. at p. 94.) Tellingly, Jessica's Law appears in the Penal Code, the code devoted to punitive statutory provisions. The fact the section containing the residency restrictions appears in the Penal Code indicates that the restrictions were punitive.

Moreover, Jessica's Law allows municipalities to enact ordinances that further restrict the residency of registered sex offenders. (§ 3003.5, subd. (c).) This allows for restrictions that confine the residency of registrants to a much greater degree than the 2000-foot area. Indeed, under the language of subdivision (c), a municipality can require registrants to reside in a specific area within the municipality or even a specific building or set of buildings. This is not quite the same as a prison — because the registrants only need to reside in the narrow area and are free to leave it — but severe restrictions on residency, like incarceration, are inherently punitive.

The residency restrictions in Jessica's Law constitute a penalty for purposes of *Apprendi* and its progeny. It is clear that the residency restrictions aggravate the punishment otherwise

authorized by the facts found by the jury or admitted by the defendant.

D.   Because the order of sex offender registration increased appellant's punishment, its imposition based on factual findings by the trial court prejudicially violated appellant's Sixth and Fourteenth Amendment right to a jury trial.

In this case, the trial court made the factual findings which triggered sex offender registration and the residency restrictions under Jessica's law. The court made findings for both steps in the *Hofsheier* analysis: both the finding that appellant's offenses were committed for the purpose of sexual gratification, **and** the factual findings supporting the court's discretionary decision to impose registration. (See RT B13–B17.) This violated appellant's constitutional right to a jury determination under the Sixth and Fourteenth Amendments.

An *Apprendi* violation is reviewed under the *Chapman* standard of prejudice. (*Chapman v. California* (1967) 386 U.S. 18, 24.) The focus is on whether the error did or did not "contribute to the verdict obtained." (*Neder v. United States* (1999) 527 U.S. 1, 11.) Although appellant did not contest the fact that his offenses were committed for the purpose of sexual gratification, he strongly contested the imposition of registration. Given his

doctors' conclusions that he is at low risk for reoffense, his strong

efforts at rehabilitation, and the strong support from family and

friends, this Court cannot say beyond a reasonable doubt that a

jury would have been ordered appellant to register. Therefore,

appellant was prejudiced. This Court should grant review and

reverse.

## CONCLUSION

This Court should grant review to give lower courts

guidance on the exercise of discretion under section 290.006,

because lower courts have been inconsistent in the statute's

application. Moreover, this Court should grant review because the

trial court below abused its discretion in requiring appellant to

register as a sex offender for life. Further, this Court should grant

review because the trial court's order prejudicially violated

appellant's right to jury trial under the Sixth and Fourteenth

Amendments.

Dated: June 9, 2014          Respectfully submitted,


_____
CHRISTOPHER NALLS
Attorney for Appellant
WILLIAM ZAFRA VELASCO JR.


39

## WORD COUNT CERTIFICATE

I certify that the <u>Petition for Review</u> contains <u>8,082</u> words, as calculated in accordance with rule 8.504(d) of the California Rules of Court. Executed at Pasadena, California, on <u>June 9, 2014</u>.

_____

CHRISTOPHER NALLS

## DECLARATION OF SERVICE

### People v. William Zafra Velasco Jr., B239192

I, Christopher Nalls, declare that I am an active member of the State Bar of California and I am not a party to the above-entitled action. My business address is 107 South Fair Oaks Avenue, Suite 309, Pasadena, CA 91105.

On June 9, 2014 at Pasadena, California, I served the attached:

### PETITION FOR REVIEW

by electronic service: by e-submitting a true and correct copy from my electronic service address to the Court of Appeal, Second District, Division Eight, at http://www.courts.ca.gov/2dca-esub.htm

by mail: by mailing a true and correct copy with fully prepaid postage by U.S. Mail to each addressee named hereafter, addressed respectively as follows:

Clerk of the Court
Los Angeles Superior Court
delivery: Hon. Steven D. Blades
210 W. Temple Street, Dept. M-6
Los Angeles, CA 90012-3210

Office of the Attorney General
Jonathan J. Kline, Deputy AG
300 South Spring Street
Fifth Floor, North Tower
Los Angeles, CA 90013

Office of the District Attorney
trial deputy: Lauren Guber
18000 Criminal Courts Building
210 W. Temple St.
Los Angeles, CA 90012

California Appellate Project
520 S. Grand Avenue, 4th Floor
Los Angeles, CA 90071

Jose Lauchengco Jr.
Attorney at Law
P.O. Box 767
Los Angeles, CA 90078-0767

William Zafra Velasco, Jr.
[address on file]

I declare under penalty of perjury that the foregoing is true and correct. Executed at Pasadena, California, on June 9, 2014.

_____
CHRISTOPHER NALLS

(75)